## HEADRICK *v.* FRITTS.

### (*Knoxville.*　October 31, 1893.)

1. ADVERSE POSSESSION.　*Continuity of not broken, when.*

   The continuity of adverse possession of land is not broken by the possessor's offer to purchase a hostile claim for the purpose of quieting his own title.　(*Post, pp. 271–274.*)

2. OUTSTANDING TITLE.　*Effect of pleading.*

   Pleading an outstanding title as a defense in ejectment does not estop the pleader to dispute its validity or to set up his adverse holding against that title in a subsequent suit brought to enforce it against him.　(*Post, pp. 274, 275.*)

3. ESTOPPEL.　*Between attorney and client.*

   An attorney having furnished abstract of title, upon faith of which another has purchased and paid for land, cannot defeat such purchaser's title by subsequently becoming the purchaser, at a nominal price, of an outstanding superior title, of which he had knowledge at the time, but did not mention in the abstract nor inform the purchaser until the purchase-price was fully paid.　(*Post, p. 275.*)

---

#### FROM HAMILTON.

---

Appeal in error from Circuit Court of Hamilton County.　JNO. A. MOON, J.

E. M. DODSON and PRITCHARD, SIZER & THOMAS for Headrick.

J. A. CALDWELL for Fritts.

WILKES, J.　This is an action of ejectment, to recover five thousand acres of land lying in Hamilton County.

Defendant entered a disclaimer as to all but one tract of twenty-nine and eight-tenths acres, and an undivided one-third interest in another tract of thirty-seven and one-half acres.

As to these tracts, he pleads not guilty, setting out in his plea the boundaries of the two small tracts. The cause was tried, without the intervention of a jury, in the Court below, where the Circuit Judge was of opinion that plaintiff had not made out his case, and dismissed his suit, and he has appealed and assigned errors.

The plaintiff claims under an older grant, but defendant holds under a chain of title with adverse possession for more than seven years.

It is assigned as error that defendant has not, by proof, established the fact of possession of any part of the land in controversy, being an interlap between the two grants.

This assignment is not well made. We are of opinion, from the facts in the record, that defendant, and those under whom he claims, have been in possession of the disputed territory since 1883, and that some parts of it have all the while been under actual inclosure, both by defendant and Sims, his predecessor in title.

It remains to be considered whether this possession has been adverse and continuous during this time. It is insisted that the continuity of adverse possession, if it ever began, was broken by an offer upon the part of Sims, from whom defendant claims title, to purchase the lands from the plaintiff.

It may safely be assumed as a general proposition that, if a defendant in possession of disputed territory concede that the true title is in another, and offer to purchase from him, then the continuity of adverse possession is broken. But there is a broad difference between the cases where the real title is conceded and acknowledged to be in another, and an offer or contract is made to buy the title from him as the true owner, and the cases where there is a new offer to buy in an outstanding claim for the purpose of quieting a title already held, in order to prevent litigation.

The defendant in possession has the right to buy in an outstanding hostile claim in order to quiet his own title and possession under a different title, and he may make such purchase or offer to purchase of the real owner without prejudice to his own adverse holding, provided he buys in such hostile title in order to quiet his own, and not merely as a recognition of the superiority of the adverse title, and his desire to hold under it.

Each case will depend upon its own facts and circumstances, and the intention of the parties as to whether the fact of purchase is intended as an acknowledgment of the true title or a mere effort to extinguish an adverse claim; and the solution does not depend merely upon the question whether the party from whom the purchase is made or attempted is or is not the true owner.

Every claimant is presumed to have some title, and the defendant is not required, at his peril, to

Headrick *v.* Fritts.

determine that he is buying from the true owner, but he may buy any adverse claim, whether well or ill founded, in order to protect his own title.

In this case, the circumstances of the parties are peculiar. Sims, the vendor of defendant, bought and went into possession in 1883. Defendant bought from Sims in 1888, and went into possession under Sims' title. While Sims was the owner and in possession, between the date of his purchase and of his sale to defendant, he agreed to buy in plaintiffs' claim to the land under the older title, called the "Stephenson grant." For this he was not to pay any money, but was to assist in perfecting titles to other parcels of land in the plaintiff. Fritts, his vendee, knew nothing of this arrangement when he bought, and was not aware of any defect in his title through Sims, nor of any claim on the part of plaintiff.

Plaintiff had derived his title immediately from one Stanly, who is a joint plaintiff in this action. Stanly's title was derived from and under a chancery proceeding instituted to wind up an abandoned corporation. He took title in November, 1886, under a deed from a Clerk and Master, and immediately quitclaimed all his rights to the plaintiff by a mere indorsement on the deed to him from the Clerk and Master.

At this time the land in dispute was being held by Sims, under the younger or Minnis title, and he was in actual possession, and this possession

18—9 P

was known to plaintiff when he took title to the land from Stanly.

The entire proceeding, under which this title was obtained by plaintiff, was indicative of the fact that the land was worthless, or that the title to it was defective and disputed, the price paid being only $5 for the entire 5,000 acres thus bought by quitclaim indorsement.

Plaintiff having thus become the owner of the older or Stephenson title, Sims, the vendor of defendant, entered into a contract, as before stated, to buy in his claim. He never consummated the purchase, and the transaction was not pressed by either party, but was suffered to remain dormant for about six years.

Under these circumstances, we think this was not an effort to buy a title recognized to be perfect, but it was simply to quiet a title Sims already held by extinguishing a hostile claim; and the fact that the negotiations were allowed to slumber so long strongly indicates that neither party considered the matter of perfecting his title as a matter of any great importance.

In the meantime, Defendant Fritts had bought and paid for the property, and had made valuable improvements upon it, in ignorance of any defect in his title.

It is said, however, that defendant is now estopped to deny the Stephenson title, or to set up any adverse holding against it, inasmuch as in the Ellis suit for the same land defendant, as well

Headrick *v.* Fritts.

as his vendor, Sims, had admitted under oath that they were holding under the older Stephenson grant. We do not attach great importance to this admission. It is true that defendant and his vendors did, in sworn answers in the Ellis suit, admit and contend that they were holding under the Stephenson as well as the Minnis title, but it also appears that these answers were prepared by plaintiff, as the attorney at that time of defendants, and they made the answers under plaintiff's advice as their attorney that they had a right to rely upon an outstanding title, and the defense, as thus made by them, was under the advice and suggestion of plaintiff as their attorney and counsel.

It further appears that in November, 1886, a short time before plaintiff purchased in this Stephenson title, he made out an abstract of title to this land in controversy, and upon the strength of this title Defendant Fritts purchased the land.

In this abstract plaintiff made no mention of the title which he a few days afterward bought in, but did refer to the title under which Sims held, and to Sims' possession. Plaintiff did not at this time own the Stephenson title, but bought it shortly afterward, but never gave any notice to defendant of his adverse title until after he had paid for his land and made his improvements thereon, of all of which plaintiff had notice.

Under these circumstances, we think the Circuit Judge was correct in refusing relief to plaintiff, and his judgment is affirmed with costs.