[No. 1497, March 4, 1913.]

T. S. CHAMBERS, Appellee, v. CHARLES H. BES-
SENT, Appellant.

### SYLLABUS (BY THE COURT).

1. Equitable estoppel is the effect of the voluntary con-
duct of a party whereby he is absolutely precluded, both at
law and in equity, from asserting rights which might per-
haps have otherwise existed, either of property, of contract,
or of remedy, as against another person who has in good
faith relied upon such conduct, and has been led thereby to
change his position for the worse who on his part acquired
some corresponding right, either of property, of contract, or
of remedy.

2. To constitute an equitable estoppel there must be:
1. Conduct—acts, language or silence—amounting to a rep-
resentation or concealment of material facts. 2. These
facts must be known to the party estopped at the time of
his said conduct, or at least the circumstances must be such
that knowledge of them is necessarily imputed to him. 3.
The truth concerning these facts must be unknown to the
other party claiming the benefit of the estoppel at the time
when such conduct was done and at the time when it was
acted upon by him. 4. The conduct must be done with the
intention, or at least with the expectation that it will be
acted upon by the other party, or under such circumstances
that it is both natural and proper that it will be acted upon.
5. The conduct must be relied upon by the other party,
and thus relying, he must be led to act upon it. 6. He must
in fact act upon it in such a manner as to change his posi-
tion for the worse; in other words, he must so act that he
would suffer a loss if he were compelled to surrender or
forego or alter what he has done by reason of the first party
being permitted to repudiate his conduct and to assert rights
inconsistent with it.

3. It may safely be assumed as a general proposition
that, if a defendant in possession of disputed territory con-
cede that the true title is in another, and offer to purchase

from him, then the continuity of adverse possession is broken.

4. The facts upon which the estoppel is to be predicated must amount to a waiver or non-claim.

5. Chapter 22, Session Laws of 1899, does not interfere with assessments made previous to the enactment of this law, but does control proceedings subsequent to the act, including sales pursuant to sec. 31, of said act. Held: the certificate of sale issued under provisions of sec. 23, chap. 22, session laws of 1899, constitute color of title, notwithstanding the provisions for defense.

Appeal from District Court, Chaves County.

JAMES M. DYE, for Appellant.

The court erred in sustaining the demurrer to the new matter pleaded by appellant in his reply to plaintiff's amended answer to appellant's cross-complaint. Newell on Ejectment, 738; Liggett v. Morgan, 11 S. W. 241; Foley v. Jones, 52 Mo. 64; Wells v. Halpin, 59 Mo. 92; Moore v. Granby Min. & S. Co., 80 Mo. 86; C. L. 1897, sec. 2918; Smith, Admr. v. Newby, 13 Mo. 163; sec. 34, chap. 22, Laws of 1899; sec. 4092, C. L. 1897.

The court erred in admitting in evidence, as color of title, tax sale certificate issued to Otto Hedgcoxe. Secs. 4074, 4081, 4085, 4086, 4087, 4092, 4093, C. L. 1897; secs. 22, 23, 27, chap. 22, Laws of 1899; Pitkin v. Shacklett, 17 S. W. 641; Atkeson v. Butler Imp. Co., 28 S. W. 861; Black on Tax Titles, secs. 262, 400, 401 and 415; Manker v. Peck, 81 Pac. 171; Worden v. Cole, 86 Pac. 464; Nagle v. Tiedeman, 88 Pac. 969; Dye v. Midland Ry. Co., 94 Pac. 785; Redfield v. Parks, 132 U. S. 239; Coulter v. Stafford, 56 Fed. 564; Duncan v. Gillette, 14 Pac. 479; Moore v. Harris, 4 S. W. 349; Burden v. Taylor, 27 S. W. 349; Rush v. Lewis & Clark Co., 93 Pac. 943; Large v. Fisher, 49 Mo. 307; Spurlock v. Allen, 49 Mo. 178; Sanders v. Ransom, 20 So. 530; Bennett v. Keehn, 15 N. W. 776; Yankee v. Thompson, 51 Mo. 258; Daniels

v. Case, 45 Fed. 843; Moore v. Brown, 11 How. 424; Hurd v. Brisner,.28 Pac. 371; Mason v. Crowder, 85 Mo. 529; case note to Mathews v. Blake, 27 L. R. A. (N. S.) 339; Hubbard v. Johnson, 9 Kas. 632; Sheeny v. Hinds, 6 N. W. 781; Maxey v. Clabaugh, 6 Ill. 26.

It was error to admit assignment of said tax sale certificate from Otto Hedgcoxe. Duncan v. Gillette, 14 Pac. 479; Moore v. Harris, 4 S. W. 439; Burden v. Taylor, 27 S. W. 349; Rush v. Lewis & Clark Co., 93 Pac. 943; id. 95 Pac. 836; Coulter v. Stafford, 56 Fed. 564; Large v. Fisher, 49 Mo. 307; Spurlock v. Allen, 49 Mo. 178; Yankee v. Thompson, 51 Mo. 238; C. L. 1897, sec. 4100; Pitkin v. Reibel, 16 S. W. 244; Pitkin v. Shacklett, 17 S. W. 641; Atkeson v. Butler Imp. Co., 28 S. W. 861; Sanders v. Ransom, 20 So. 530; Bennett v. Keehn, 15 N. W. 776; Black on Tax Titles, secs. 396, 400, 402 and 505; State v. Mantz, 62 Mo. 258; Duffey v. O'Reiley, 88 Mo. 418; Macy v. Clabaugh, 6 Ill. 26; Daniels v. Case, 45 Fed. 843; Moore v. Brown, 11 How. 424; Waterson v. DeVoe, 18 Kas. 223; Mason v. Crowder, 85 Mo. 529.

Certificate issued to Hedgcoxe did not constitute color of title and possession claimed thereunder by Hedgcoxe was not adverse to the true owner. Black on Tax Titles, secs, 322, 324, 325, 327, 504; Cooley on Taxation, 981; Huscheon v. Huscheon, 12 Pac. 410; Steckler v. Ewing, 93 Pac. 286; Flueck v. Pedigo, 104 Pac. 1119; Stout v. Michelcook, 114 Pac. 929; Douglas v. Dickson, 1 Pac. 541; McLellan v. Omodt, 33 N. W. 326; Mayo v. Woods, 31 Calif. 269; Eldridge v. Keuhl, 27 Ia. 160; Henderson v. Oliver, 27 Ia. 20; Barrett v. Love, 48 Ia. 103; Holden v. Collins, 5 McLean, 189; Harrell v. Enterprise Sav. Bk., 56 N. E. 63; Bride v. Watt, 23 Ill. 507; McKeighan v. Hopkins, 15 N. W. 711; Pease v. Lawson, 33 Mo. 35; DeGraw v. Taylor, 37 Mo. 310; O'Mulcahy v. Florer, 8 N. W. 166; Salt Lake Inv. Co. v. Fox, 13 L. R. A. (N. S.) 627; Irving v. Brownwell, 11 Ill. 402; Rawlings v. Bailey, 15 Ill. 178; Keller v. Hawk, 91 Pac. 778; 1 Cyc. 1099-V; chap. 63, Laws 1899; chap. 76, Laws 1905; 27 Am. & Eng. Enc. Law, 982; Osterman v. Baldwin, 73 U. S. 116.

G. A. RICHARDSON, for Appellee.

In New Mexico an uninterrupted occupancy of land by a person who in fact has no title thereto for a period of ten years, adverse to the true owner, operates to extinguish the title of the true owner thereto, and vests the title of the property absolutely in the occupant. Laws of 1899, chap. 63, sec. 2; Maxwell Land Grant Co. v. Dawson, 151 U. S. 566; Ellis v. Pearson, 58 S. W. 318; Nelson v. Davidson, 52 Am. St. Rep. 338; Solomon v. Yrisarri, 54 Pac. 752; Latta v. Clifford, 47 Fed. 164; Field v. Boynton, 33 Ga. 242; McClellan v. Kellogg, 17 Ill. 501; Rannells v. Rannels, 52 Mo. 112; McCall v. Neely, 3 Watts 69; City of St. Louis v. Gorman, 29 Mo. 593; Cooper v. Ord, 60 Mo. 431; Bernal v. Gleim, 33 Cal. 676; Pillow v. Roberts, 13 Howe 472; 13 Am. Dec. 678; Bradstreet v. Huntington, 5 Pet. 462; Elmendorff v. Taylor, 10 Wheat. 168; Bowman v. Watson, 1 How. 189.

Color of title. State v. Southerland, 14 Am. Dec. 578; Bibble v. Bellingham Co., 163 U. S. 63; Wright v. Mattison, 18 How. 50; Normant v. Eureka Co., 39 Am. St. Rep. 45; Latta v. Clifford, 49 Fed. 614; chap. 22, laws of 1899; Brooks v. Bruyn, 35 Ill. 394; Wortham v. Fletcher, 42 S. W. 900; Winters v. Hamer, 64 S. W. 44; Solomon v. Yrisarri, 54 Pac. 752.

JAMES M. DYE, for Appellant.

It was error to admit evidence as to possession of lands, for the reason that such possession was not commenced or continued under color of title as required by the laws of New Mexico. Chap. 63, laws of 1899; sec. 23, laws of 1899.

### STATEMENT OF FACTS.

This cause of action arose in the District Court of Chaves County, the appellee suing to quiet title to all that part of the west half of the northeast quarter of section 19, township 13, south of range 26, E. in said county, lying west of what is known as the Great Northern Canal.

The appellant acquired his title to the land in controversy by deed dated January 4th, 1899, at which time the taxes for the year 1898 were unpaid. On November 6th, 1899, the whole of the west half of the northeast quarter of said section 19, was sold to one Otto Hedgcoxe, who received from the County Treasurer and Ex-Officio Collector a tax certificate. The purchaser, Hedgcoxe, shortly thereafter went into possession of the premises, fenced it and made other improvements, it being admitted that he has been in possession, or his successors in interest, until the institution of this suit. At the time appellant acquired title to the land in question, he was a resident of Cleveland County, Oklahoma, never having been in Chaves County until about the time this cause was tried. He alleged, in his reply to plaintiff's amended answer to his cross complaint, that he had no knowledge that his land has been sold for taxes, or of appellee's possession and claim of ownership thereof, until after the institution of this suit, when he immediately asserted his right and title and asked to have the same quieted against appellee's alleged void tax title.

## OPINION OF THE COURT.

HANNA, J.—The first error assigned by appellant is that: "The Court erred in sustaining the demurrer to the new matter pleaded by appellant in his reply to plaintiff's amended answer to appellant's cross complaint." It is argued that the facts pleaded as new matter in appellant's reply to appellee's amended answer to appellant's cross complaint, if true, would have amounted to a recognition on the part of appellee of appellant's paramount title, and that appellee was not holding adversely to appellant's rights, it being contended that appellee was thereby estopped from asserting that appellant was barred by limitation from asserting his claim and title to the land; and, that the statute of limitations would not begin to run until appellant had knowledge of the alleged fraud practiced upon him.

Those portions of the reply necessary to be considered in connection with this assignment of error are as follows:

"(b). That in the month of October, 1908, the plaintiff, through his agent and representative, called on this defendant at his place of business at Norman, Okla., and endeavored to induce him to execute a quit claim deed for said premises; and then and there falsely represented to this defendant that said land was then wild and arid; that it was enclosed in a large pasture, and was of no value whatever to this defendant, or to any one else, except to a person owning lands adjoining it to whom it would be of some value as pasture lands.

"(e). That although plaintiff was then in possession of said land, claiming title thereto under a tax deed issued by the collector of said Chaves County; and although said land was then in cultivation and under irrigation and of the value of $8,000 or $10,000; and although plaintiff well knew that this defendant was wholly ignorant of the fact that said land had been sold for taxes, or that plaintiff was then in possession thereof, claiming title to same under tax deed, plaintiff falsely and fraudulently concealed from this defendant such facts. That had not plaintiff so falsely and fraudulently concealed from this defendant the true status and conditions of the title and possession of said premises, this defendant would have immediately instituted proper proceedings for the recovery thereof.

"(f). That all such representations so made by plaintiff to this defendant, as aforesaid, were false and fraudulent and so known to the plaintiff at the time of making them; and plaintiff concealed from this defendant the true status and conditions of the title and possession of said premises, from this defendant for the fraudulent purpose of misleading him in relation to said property to his injury, and to lull him into a sense of security concerning said property, and to prevent him from taking appropriate action for recovery thereof until his right of action had been barred by the statute of limitation of this territory.

"(g). That the facts concerning the status and conditions of the title and possession of said premises were peculiarly within the knowledge of plaintiff, and this de-

fendant had not the knowledge or any ready means of information, concerning the same; and it was the duty of plaintiff to inform this defendant of such fact, and his concealment of such facts from the defendant, under the circumstances hereinbefore detailed, was a legal fraud upon this defendant.

"(h). That this defendant relied upon said representations, and upon plaintiff's conduct and refrained from instituting proceedings for the recovery of said land until June 30, 1910, when he discovered plaintiff's said fraud.

"(i). So this defendant says that by reason of plaintiff's false and fraudulent misrepresentations to him concerning the value and situation of said land, and his fraudulent concealment from this defendant of the true status and condition of the title and possession thereof, and this defendant's implicit reliance and belief in the truth of such statements, and reliance upon plaintiff's said conduct prevented him from making any further inquiry into the true condition of the title and possession thereof until after the commencement of this suit, and that plaintiff should not now be allowed to set up a title to said premises by adverse possession and should be estopped from claiming and asserting that this defendant is now barred by limitation from asserting his claim and title to said land."

It is to be noted that the facts set up in the foregoing pleadings raised the question of alleged fraud on the part of plaintiff below, in concealing from defendant, in this cause below, the facts concerning the status and conditions of the title and possession of the premises in controversy, which it is alleged were peculiarly within the knowledge of the plaintiff, and concerning which, it is alleged, a duty existed on the part of said plaintiff to inform said defendant, ignorance on the part of said defendant concerning the tax sale and subsequent possession by the plaintiff being pleaded.

Upon this state of facts an equitable estoppel is sought to be predicated. Pomeroy's Equity Jurisprudence, sec. 804, defines this type of estoppel in the following language:

"Equitable estoppel is the effect of the voluntary con-

duct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right, either of property, of contract, or of remedy."

An examination of the numerous decisions dealing with this form of estoppel discloses that the so-called essential elements of an equitable estoppel have been in some of its phases and application, modified and limited so that general requisites cannot be considered as applicable to every case. It seems to be conceded, however, that certain essential elements usually exist, viz:

"There must be conduct—acts, language or silence —amounting to a representation or concealment of material facts. These must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. The truth concerning these facts must be unknown to either party claiming the benefit of the estoppel at the time when such conduct was done and at the time when it was acted upon by him. The conduct must be done with the intention, or at least with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and proper that it will be acted upon. The conduct must be relied upon by the other party, and thus relying, he must be led to act upon it. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to so surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it." Pomeroy's Equitable Jurisprudence, sec. 805.

The third element enumerated above, as pointed out by Pomeroy at section 810, is limited in its application by the fact that if, at the time when he acted, such party

had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying on the representation or concealment. It has been further said by Mr. Pomeroy, in the section last quoted that, "In case of alleged estoppel by conduct affecting the title to land, the record of the real title would furnish a means by which the other party might ascertain the truth, so that he could not 'claim to be misled and could not insist upon an estoppel.'" Neal v. Gregory, 19 Fla. 356; Thor. v. Oleson, 125 Ill. 365; Clark v. Parsons, 69 N. H. 147.

We do not differ with the authorities that assert that the foregoing limitation should be strictly confined to cases where the conduct creating the alleged estoppel is mere silence, and would not be applicable if the person to be estopped resorted to affirmative acts or words.

In the case at bar the appellee is clearly asserting a title which was a matter of record at the time, it is asserted, he violated a duty owed by him to the appellant to make known the status of title and possession of the premises, which facts, it is said, were peculiarly within his knowledge. We cannot agree with this contention, and to lay down such a rule would, in our opinion, open the door to fraud.

There remains for our consideration appellant's contention that the statute of limitations did not begin to run until appellant had knowledge of the fraud practiced upon him, this contention being based upon the alleged recognition by appellee of appellant's paramount title. We have found many authorities pertinent to this point, and the courts have not been uniform in their rulings upon this question. In our opinion, however, the following quotation from the opinion in the case of Hedrick v. Fritts, 93 Tenn. 270, at page 272, is the best exposition of the law which we are able to find:

"It may safely be assumed as a general proposition that, if a defendant in possession of disputed territory concede that the true title is in another, and offer to purchase from

him, then the continuity of adverse possession is
**3** broken. But there is a broad difference between the
cases where the real title is conceded and acknowl-
edged to be in another, and an offer or contract is made
to buy the title from him as the true owner, and the cases
where there is a new offer to buy in an outstanding claim
for the purpose of quieting a title already held, in order
to prevent litigation.

"The defendant in possession has the right to buy in
an outstanding hostile claim in order to quiet his own
title and possession under a different title, and he may
make such purchase or offer to purchase of the real own-
er without prejudice to his own adverse holding, provided
he buys in such hostile title in order to quiet his own, and
not merely as a recognition of the superiority of the ad-
verse title, and his desire to hold under it.

"Each case will depend upon its own facts and circum-
stances, and the intention of the parties as to whether the
fact of purchase is intended as an acknowledgement of
the true title or a mere effort to extinguish an adverse
claim; and the solution does not depend merely upon
the question whether the party from whom the purchase
is made or attempted is or is not the true owner."

It has also been decided that the facts upon which
**4** the estoppel is to be predicated must amount to a
waiver or non-claim. Chapin v. Hunt, 40 Mich. 595.

It certainly cannot be argued that the facts set up in
the foregoing reply in any sense asserted a waiver by ap-
pellee or non-claim by him. On the contrary, it is asserted
that the plaintiff concealed the true status and condition
of the title which he was then asserting. It would appear
to us from the reply as a whole that appellee was assert-
ing a claim to the premises in question, and did nothing
more than seek to secure a quit claim from appellant for
the purpose of quieting his title, which he would clearly
have the right to do. For the reasons stated we do not
consider the first assignment of error well taken.

The remaining six assignments of error are all covered
by the able opinion of Judge Pope, who tried the case be-
low, and after careful examination of all the authorities

referred to, and a most careful study of appellant's very thorough and able brief, we are under the necessity of adopting the views of the trial court, and therefore give the said opinion in full as best expressing the necessary conclusion of this court with respect to the remaining assignments of errors, the opinion being as follows:

"The plaintiff claims title by virtue of adverse possession, and also by virtue of a certain tax proceeding. Dealing with the first claim of title, it is found by the court that the plaintiff and his predecessors in title beginning with the tax certificate pleaded by them, had been in actual, continuous, uninterrupted possession of the premises in good faith for ten years next preceding the suit, with payment of taxes during said period. It only remains to determine whether this possession was adverse to the true owner and was under color of title. If these two conditions concurred with the others above named, then under the laws of 1899, chap. 63, sec. 2, all of the elements of adverse possession necessary to confer title were present. Maxwell Land Grant Co. v. Dawson, 151 U. S. 586.

"It is contended by defendants, however, that the possession was not adverse for the reason that at least during the first three years thereof there was a right in the owner to redeem and resume possession, and that the possession of plaintiff's predecessors must be deemed to have been held in subservience to the original owner and not adversely thereto. Peace v. Lawson, 33 Mo. 35, is cited in support of this contention. It does not appear in the latter case, however, that the owner was entitled to possession between date of certificate and date of deed. In the present case, by express provision of statute the owner was entitled to possession up to the date of the deed. The possession of plaintiff's predecessor, Hedgcoxe, was therefore contrary to the right of the original owner to possess and the latter could at any time up to the date of the deed, by proper proceedings have ousted Hedgcoxe from possession. I am of the opinion that under such circumstances, and under the claim of right which he by his testimony shows he was asserting, the possession was adverse.

"A further contention by the defendants is that the possession was not under color of title, for the reason that it was under a certificate of sale for taxes and that such certificate did not purport to convey title and could not, therefore, constitute apparent title, which is but another name for color of title. The determination of this question in part involves the question of whether the Revenue Act of 1899, being chap. 22 of the laws of 1899 was in force governing this sale at the date thereof, or whether the sale was governed by the pre-existing provisions found in C. L. 1897, secs. 4015-4121. This question is not free from difficulty, due largely to the obscurity of language in the concluding section of chapter 22. While this court is inclined to a different view upon another feature of the act of 1899 involved in Vest vs. Easton, No. 517 Chaves County, in which a written opinion was filed, further consideration of this act leads to the conclusion that it controls the sale here made in November, 1899. I am of the opinion that the proper construction of the concluding clause of this act is that while it did not interfere with any assessments previously made, all of which were to be judged by the pre-existing law, it was contemplated by the legislature that as to any proceedings subsequent to the act entirely separate and apart from the matter of assessments, the provisions of the act were to control. Thus it is expressly provided in the concluding section that suit might be brought and judgments rendered in the manner provided by the act. I think that this provision includes sales under section 31 in cases where the taxes were less than $25.00, since the procedure under section 31 is made the equivalent, in cases of taxes of that amount, of proceedings in court under the preceding sections where the amount was over $25.00. This view of the matter insures harmony in the matter of sales for taxes instead of presuming that the legislative intent was to have sales over $25.00 under one clause and sales under $25.00 under the pre-existing law. No good reason appears why this could have been the legislative intent, and every consideration of public convenience inclines to the view that it was not the legislative intent.

Chambers v. Bessent, 17 N. M. 487.

"Having decided therefore, that the act of 1899 was applicable to the sale here made, then the provision contained in its section 23 as to the effect of the certificate of sale becomes relevant on the question of whether that certificate of sale constituted color of title. It may readily be conceded that the ordinary certificate of sale for taxes does not constitute color of title. As a rule it is simply evdience in the hands of the purchaser affording him at the end of the statutory period the basis on which he may secure a deed, if the owner has not redeemed. No reason appears, however, why the legislature may not in the first instance grant the equivalent of a deed with a provision for defeasance, and if it has done so, such an instrument constitutes color of title. The mere fact of a provision in the tax act of 1899, not, however, embodied in the certificate that the right of possession shall exist in the former owner during three years, does not detract from the instrument as color of title, since a paper may be deeded although retaining possession for a time in the grantor, immediate possession not being a necessary element of a deed. Ellis v. Pearson, 58 S. W. 318; Seals v. Pierce, 83 Ga. 787, 20 A. S. R. 344.

"It will be noted that our act of 1899 contains the express provision that the effect of the certificate shall be to sell and convey said real estate to the purchaser, his heirs and assigns, subject to the right of the former owner to redeem the same within three years from date of sale. The effect of this is to vest title in the purchaser subject to defeasance. Perhaps the only other states which have similar provisions are Arkansas and Tennessee, and the decisions of these states as exemplified by Worthum v. Fletcher (Ark.) 42, S. W. 900, and Winters v. Hanner, (Tenn.) 64 S. W. 44, are to the effect that a tax sale certificate under such provisions of statute constitutes color of title. In my judgment, the certificate here issued when read in the light of the act of 1899, does convey color of title, unless that effect is defeated by the next point made by the defendants.

"This is that the certificate is void on its face for four reasons, stated in the brief of the defendants under head-

ings (g), (j) and (o). It is argued that a paper void on its face, whatever may be its phraseology, cannot constitute color of title, and that the certificate of sale shows non-conformity to statute so as to make it upon its face a nullity. There is considerable conflict of authority as to whether a deed void upon its face is or is not color of title. There are a number of authorities, some of which will be found discussed in Wilson v. Atkinson, 77 Cal. 485, 20 Pac. 66, to the effect that where the language of the deed purports to transfer title, and yet by reason of defects apparent upon its face it is void as a conveyance of title, such paper is nevertheless color of title. In Redfield v. Parks, 132 U. S. 237, it was held, following the early case of Moore v. Brown, 11 How. 414, that a deed to land sold for non-payment of taxes which is void on its face is not color of title. The weight of these decisions is somewhat impaired by the later case of Dibble v. Bellingham Co., 163 U. S. 63, wherein it is said that the usual rule under general statutes of limitations is that a void deed accompanied with actual occupation is sufficient to set the statute in motion and in which case it is pointed out that these prior decisions were in cases arising under short statutes in relation to sales of real estate for taxes. Whatever view, however, may be taken of this controverted question, an examination of the alleged facial defects in the certificate shows that these are all for non-compliance with certain provisions of the Compiled Laws which have been repealed by chap. 22 of the laws of 1899. An examination of the certificate indicates that it is worded in conformity to the act of 1899. If, therefore, as above held, this sale and the certificate issued thereunder, are governed by the act of 1899, a failure to comply with pre-existing statutory provisions, repealed by the act of 1899, can of course have no effect upon the facial regularity of the certificate.

"It follows, therefore, from what has been said, that tax certificate constitutes color of title, and that plaintiff, therefore, was the owner of the premises by virtue of the statute of limitations, at the date this suit was brought for, as was said by the Supreme Court of the United States

in Maxwell Land Grant Company v. Dawson, 151 U. S. 586: 'In New Mexico an uninterrupted occupancy of land by a person, who in fact has no title thereto, for a period of ten years adverse to the true owner, operates to extinguish the title of the true owner thereto and vests the title of the property absolutely in the occupant.'

"This view of the matter renders it unnecessary for the court to decide as to whether the tax title which constitutes plaintiff's other bases of action is, when viewed in the light of the statute, legal or not, since disregarding that as a muniment of title, there must still be judgment for plaintiff for the reason above stated."

In our consideration of this case we have found that one point was not urged by appellant, and is therefore not decided in this opinion, which under the facts as disclosed by the record in this case, might have been quite a serious question, viz: whether the entry by appellee under the certificate of sale prior to the expiration of the period of redemption, within which time the right of possession was in appellant, was in violation of the good faith essential under section 2983, C. L. N. M. 1897, as amended by chapter 63, S. L. 1899. We do not desire this opinion to be construed as any waiver of the essential elements of good faith requisite under the laws of this state pertaining to adverse possession, this point not having been presented to the court, and not being before us for determination.

Finding no error, the judgment of the lower court is affirmed, and it is so ordered.