# CHARLESTON.

SALVATORE BITONTI *v*. KAUFFELD COMPANY.

Submitted October 23, 1923.     Decided October 30, 1923.

1. ADVERSE POSSESSION—*Essential Elements Stated.*

   Adverse possession of land to be effective must be hostile, adverse, actual, visible, notorious, exclusive, and continuous under claim or color of title for the statutory period of time. (p. 756).

2. SAME—*Offer to Purchase from True Owner Breaks Hostile Continuous Possession.*

   If during the running of the statute, the person in adverse possession purchases or offers to purchase the title from the true and rightful owner, and the facts and circumstances or the contract or offer, show that the offer was made to purchase the true title from the true owner, knowing him to be such, and not to buy an outstanding or adverse claim, in order to quiet the possession or avoid litigation, the character of the adverse possession then ceases, and the running of the statute prior thereto is stopped. Thereafter the adverse possession to become effective must continue for the full statutory period from the time of such offer. (p. 756).

3. SAME—*Intention of Adverse Holder in Offer to Purchase Title of Owner Governs, as to Whether Title Sought Recognized as Superior.*

   It will not be conclusively presumed, because the adverse holder has made such offer, that he thereby recognized the title sought to be purchased as superior to his own. The intention of the offerer governs, and that intention must be ascertained from all the facts and circumstances surrounding the parties at the time the offer is made. (p. 757).

4.   SAME—*Offer of Adverse Holder to Purchase of True Owner
     Held Not Indicative of Recognition of Superior Title of
     Seller.*

   Where the offer to purchase at a stated price is from such
   adverse holder at a public sale made by a trustee in bankruptcy
   of the true owner, and such offer is for a parcel of land which
   includes a small portion of the land held adversely by him on
   which he had valuable improvements, as well as another like
   small portion not claimed or held by him, such fact is strongly
   indicative of the intention of the person making the offer not
   to recognize the superior title of the seller; and especially so
   where after such offer the adverse holder constantly asserts
   his own title and adversary possession.   (p. 758).

Error to Circuit Court, Monongalia County.

Action by Salvatore Bitonti against the Kauffeld Company.
Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*E. M. Everly* and *Chas. T. Herd,* for plaintiff in error.

*Lazzelle & Glasscock* and *Clarence Roby,* for defendant in
error.

LIVELY, JUDGE:

Kauffeld Company, defendant below, sued out this writ of
error to review a judgment in ejectment rendered the 15th
day of February, 1923, by the lower court, sitting without a
jury.

There is no conflict of facts.   Both parties claim title from
Wm. T. Boyers who owned the land in controversy in 1897.
In 1901 he conveyed a portion of his tract to Empire Brick
Company, and in 1904 conveyed the remainder to Keystone
Industrial Company.   The latter company laid out its land,
or a portion thereof into lots, streets and alleys, recorded a
map thereof and sold the lots to various purchasers including
Garrison McClure, who was deeded lots 8, 9 and 10 in Block
No. 3 in the year 1904.   He took possession, erected valuable
houses and improvements thereon, and in 1916 conveyed the
same to defendant Kauffeld Company, which has been in
possession since the date of its deed.

It appears that Keystone Industrial Company, in laying
out its land into lots, streets and alleys, went beyond the

boundary of its land and included in its map a portion of the Brick Company's land; and the title of the Brick Company included a strip 17 feet wide and 125 feet long included within lots 8, 9 and 10 of the block purchased and held by McClure and his successor in title, Kauffeld Company. The strip 17x125 fet claimed by each litigant is the rear of these lots where they abut on an alley. The title of the Brick Company included the alley at the rear of these lots, which alley is 16 feet wide. There seems to be no question of the title of the Brick Company to this strip off of the rear of these lots, and the alley, together making a parcel of land 33x125 feet. In 1912 the Brick Company's land was sold by a trustee in bankruptcy and purchased by a predecessor in title of plaintiff, Salvatore Bitonti, who obtained a special warranty deed to this parcel 33x125 feet in 1921, and instituted this action of ejectment to obtain possession.

The defense interposed was adverse possession under the deed of 1904 for a period of more than ten years. Possession with valuable improvements was unquestioned; but plaintiff asserts that it was not hostile and continuous for the statutory period, because for this: that at the sale by the trustee in bankruptcy in 1912 the parcel of land 33x125 feet, as a separate tract, was offered for sale to the highest bidder and McClure offered $50 therefor and the lot was knocked down to him at that price by the auctioneer; but immediately after- wards the entire land of the Brick Company was offered by the trustee and purchased by Barrickmans, predecessors in title to plaintiff, their offer for the whole being accepted, thus vacating the sale of the separate parcel to McClure. Tersely stated, the claim of plaintiff is that this offer of McClure to purchase the title of the true owner of the 33x125 feet parcel in dispute at the price of $50, which offer was accepted, but afterwards vacated by a sale of the whole to another person, defeats the running of the statute; and in order for defendant to successfully assert adversary possession he must show that he has held adversely for ten years after the date of his offer to purchase the true title. This proposition of law defendant stoutly controverts, and it says the court erred in not striking out the evidence of the offer of McClure to purchase at the

trustee's sale.  Thus the issue was raised.  It was decided by the lower court in favor of plaintiff.

A preliminary point in procedure, unimportant to the issue, is raised by defendant.  The declaration in ejectment was served, and filed at February rules, 1922.  At the following April rules defendant attempted to file a "plea in abatement."  The clerk refused to receive and file it; but it was lodged in his office as tendered .  At the April term the court refused to permit the plea to be filed as of April rules, and rejected the plea as then tendered.  The court sustained a demurrer to the notice and declaration in ejectment for some apparent defect and permitted the amendment at bar by the insertion of the necessary words; and the plea in abatement was again tendered and refused.  The plea is to the effect that defendant disclaims ownership or possession of that portion of the land described in the declaration which is laid down on the map of Star City as a 16-foot alley, being 16x125 feet of the land claimed by plaintiff as a lot 33x125 feet; that this alley was owned and possessed by the municipal corporation of Star City, giving its address, and therefore the municipal corporation was a necessary party.  Plaintiff says the plea was rightly rejected because tendered at April rules after there had been a conditional office judgment which was confirmed.  Defendant answers that a plea in abatement, unless it is a plea to the jurisdiction, is not governed by sec. 16, chap. 125 of the Code, which says that a plea in abatement setting up want of jurisdiction shall not be allowed to be filed later than the next succeeding rules after a conditional judgment or decree nisi is entered.  Defendant, therefore, says the court should have received the plea setting up want of proper parties defendant, at any time tendered before the trial.  But was Star City, the alleged owner and possessor of the alley, a necessary party to the controversy between these parties?  The issue was narrowed down to the strip off of the rear of plaintiff's lots 8, 9 and 10 in Block 3, which was 17x125 feet long.  Defendant did not claim the alley either by deed or possession.  We do not see that the municipal corporation was a necessary party; and we think the plea, as a plea for want of a necessary co-defendant, was properly re-

jected whenever offered. We note, however, that the judgment against defendant is for all of the land described in plaintiff's declaration. This judgment is not binding upon the municipality, if it should see cause to assert its title or claim to the 16-foot alley. The plea tendered and rejected contained a disclaimer of the alley; and we think was good as a disclaimer and should have been permitted to be filed as a disclaimer alone. Brief of counsel for defendant asserts that a disclaimer of the alley was filed before the case went to trial; but we find none in the record. But the court, which sat without a jury, evidently considered such disclaimer in, because evidence was introduced without objection by defendant showing that he made no claim to the alley and that it was used by the general public as an alley.

The vital question is: whether McClure's bid for the parcel 33x125 feet at the sale of the trustee in bankruptcy at the price of $50, in 1912, is such a recognition of plaintiff's title as will defeat his claim of adverse possession and stop the running of the 10-year statute. It is well settled that possession in order to be adverse must be hostile, actual, visible, notorious, exclusive, continuous, and under color or claim of title. *Heavner* v. *Morgan*, 41 W. Va. 428. Defendant's possession meets all of these requirements unless his bid in 1912 to purchase the parcel from the owner of the superior title, rendered his possession from that date unhostile, thus breaking his hostile, continuous possession. The decisions of the courts, where similar situations have arisen, are legion; and many of them have been cited in the able briefs filed, evidencing much industry and research on the part of counsel. The general rule which may be deduced is that one in possession of land under a valid claim of ownership may fortify his title by purchasing any real or pretended title without thereby holding in subordination to them, and without interrupting his adverse claim of possession against other outstanding titles; and if the title purchased, or offered to be purchased, be the legal title to the land, then the adverse possession is not broken, if there be no waiver or non-claim on the part of the person adversely holding the land. But where the party in adverse possession offers to purchase the land

from the true owner, knowing him to be such, and the offer is made not merely to buy an outstanding or adverse claim in order to quiet his possession or protect himself from litigation, the offer is a recognition of the true owner's title and will stop the running of the statute.

Some of the decisions seem to hold that the contract or offer to purchase from the true owner is, *ipso facto,* conclusive of the recognition of the superior title and stops the character of the theretofore hostile possession. *Olson* v. *Burke,* 94 Minn. 456; *Railway Co.* v. *Speights,* 94 Tex. 350; *Litchfield* v. *Sewell,* 97 Iowa 247; *Jackson* v. *Britton,* 4 Wend. (N. Y.) 507. But we think the intention with which the contract or offer is made is the true criterion by which to determine whether the party in adverse possession making the contract or offer has recognized the title of the true owner, thus changing the character of his adverse possession; and the intention is to be derived from the facts in each particular case. The observations of Mr. Tiffany on the question under discussion are very pertinent and seem to us to point out the true method of solution in each particular case. We take liberty to quote them:

"*Effect of offer to purchase.* Whether, in a particular case, there was such a recognition of the rightful title as to change the character of the possession, would seem ordinarily to be a question of fact, but the courts have tended to discuss it as a matter of law, particularly with reference to the question whether the person in possession may offer to purchase from the rightful owner, without thereby recognizing the latter's title. The proper distinction would seem to be that between an offer to purchase the land, and an offer to purchase immunity from litigation, and that such is the distinction is recognized in a number of cases. In some cases, on the other hand, such a distinction appears to be ignored, and an offer to purchase from the rightful owner is regarded as necessarily involving a recognition of the latter's title.

*Effect of contract or conveyance.* The fact that the wrongful possessor actually contracts to purchase from the rightful owner, should not, it is conceived, any more than should his offer to purchase, be considered conclusive of this recognition of the latter's title, but there are occasional decisions in which it has been apparently so regarded. The language of the contract may, of course, show such recognition.

If the person in wrongful possession actually takes a conveyance from the true owner, he will ordinarily base his claim upon such conveyance rather than upon the statute of limitations, but it may occur that the conveyance is invalid, or that it covers only part of the property. The language of the conveyance may no doubt be such as to show a recognition of the grantor's title, but apart from this, it seems that the wrongful possessor's acceptance of a conveyance, while it may be evidence of his recognition of the grantor's title, is not conclusive thereof." Tiffany Real Property (2d ed.) p. 1962.

The cases cited by Tiffany are illuminating, and many of them are referred to in the briefs of counsel. Space will not admit a discussion of each of them. It may be conceded that if a defendant in possession of land offers to purchase the true title from another, conceding that the true title is in that other, then the continuity of the adverse possession is broken. But the declarations or facts and circumstances must be such as to show that the party making the offer recognizes the other title as the superior and rightful title. As was said in *Walbrunn* v. *Ballen,* 68 Mo. 164: "A proposition to buy the land by the person in possession, is not necessarily a recognition of the title of the person of whom he proposes to purchase. To prevent the operation of the statute a parol acknowledgment of the adverse title by the person in possession, must be such as to show that he intends to hold no longer under a claim of right; ;but declarations made merely with a view to compromise a dispute, are not sufficient. It was well enough to leave it to the jury, or the court sitting as such, to determine, from the evidence, whether such a proposition was made, and with what intent; but it would not have been proper, under the circumstances, for the court to declare, as a matter of law, that a proposition by defendant to purchase of plaintiffs was an acknowledgment that he did not hold adversely to them." It seems to us that there is a very great difference between an offer to buy an outstanding title which is conceded and acknowledged to be in the true owner and where an offer is made even though it be made to the true owner for the purpose of quieting a title already held and in order to prevent litigation. Each case would depend upon its own facts and circumstances and the intention

of the parties as to whether the fact of the purchase is an acknowledgment of the true title, or an attempt to extinguish an outstanding title and prevent costs and litigation. It makes no difference whether the offer be made to the true owner or not. "The fact that one believes the outstanding title to be superior so long as he does not yield thereto cannot affect the question, because the character of one's possession depends upon the fact of a claim of ownership and not its real or supposed validity. In buying what is outstanding there is nothing partaking of the nature of an acknowledgment of the superiority of that title or an abandonment of one's former claim. The old title is not conveyed away or lost. Such an act admits, and admits only, that the occupant deems it worth while to get rid of the outstanding title and unite it to the one under which he has been holding. It does not prove, and alone it does not even tend to prove, a change in the character of the possession or a recognition of a title paramount." *Oldig* v. *Fisk,* 53 Neb. 156; 73 N. W. 661. See also *Headrick* v. *Fritts,* 93 Tenn. 270. In a note to *Ripley* v. *Miller, et al.* Ann. Cas. 1912 C, p. 952, will be found a discussion of the decisions on the question under consideration. As above suggested, we think the intent of the offer is controlling whether it be made to the true owner or not; and that intent must be deduced from a consideration of the facts and circumstances surrounding each case. We have nothing before us in the case under consideration which would indicate that when McClure made the offer to purchase the 33x125-foot parcel for $50, he thereby recognized superior title in the trustee of the Brick Company. The bare fact of his purchase would not so indicate; but it is upon this bare fact that plaintiff contends that the adverse possession has been broken. McClure was a witness, but he did not state with what intention he made the offer, and he was not questioned upon that point; and it is doubtful if his verbal evidence of intention would be received. What he did would indicate his intention and would be superior to what he afterwards said his intentions were. There is nothing to show or indicate that McClure when he made the offer of purchase at the trustee's sale in 1912 knew that the Brick Company

had superior title to any portion of his lots 8, 9 and 10.   It seems that the Brick Company was in fact the owner, but whether McClure knew it or not does not appear.   The trustee or the Brick Company had divided the property of the bankrupt into different tracts and was offering them for sale, one of which was the 33x125 feet in controversy.   This constituted an adverse claim on the part of the Brick Company and its trustee, but can we presume from the fact that McClure offered to buy, that he had made a survey, and full or partial investigation of the claimant's title?   There is a conceded fact in the case which is of great importance.   The parcel offered for sale included the alley 16x125 feet (back of the lots) which McClure did not own and made no claim thereto. It was to be sold together with 17 feet off the rear of his lots adjoining the alley and the price he offered covered that strip (the alley) and may have been the incentive for his bid. Can we say, because 17 x125 feet which belonged to him was included, that by his offer he was seeking alone to protect his title from the true owner?   The evidence of Barrickman is that about 1915 he attempted to get possession from McClure of the strip which he, Barrickman, had purchased at the sale, but that McClure refused to give him possession, offering to trade Barrackman another piece of land which he owned, for his claim.   McClure was still asserting his ownership of the 17 feet off of the rear of his lots, in dispute.   This indicates that he had never recognized any other title and that his offer to purchase at the sale was not a recognition.   Prior to the sale in 1904 his adverse possession was notorious.   He had constructed on the lots a hotel, and a store, the upper part of which he used as a dwelling, and had placed a stable on the rear of the lots where the 17 feet is in dispute.   From that time until 1916 when he sold the property to Kauffeld Company, he had exercised ownership, having tenants in the houses and collecting rents and had paid the taxes.   There is no word or other act from which it could be inferred that he ever recognized a superior title; and the bare fact of his offer to purchase at a trustee's sale we do not think is sufficient to stop the running of the statute in his favor.   A sale of this character at public auction is quite different from a sale in

private where there are negotiations and where a person seeking to purchase is likely to do so with the view of securing the superior title, and would be supposed to know the full circumstances affecting the title. A superior title would be more likely considered and recognized at a private sale, than at a sale by a trustee at a bankrupt sale.

From what has been said we are of opinion that the facts and circumstances surrounding the offer of purchase made by McClure at the trustees sale in 1912, of the 17x125 feet off of the rear of his lot, including therein the 16-foot alley, as offered by the trustee, was not a recognition of, a superior title in the true owner (afterwards ascertained to be such) and that the offer did not change the character of his adverse and hostile possession or its continuity.

The judgment will be reversed and annulled, and a new trial awarded.

*Reversed; new trial awarded.*